The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Thank you and good morning everyone. The first argued case this morning is No. 191498, Huawei Technologies Co., Ltd. v. Iancu. Mr. Love, proceed.  The PTAS decision should be reversed because the board misapplied the law of obviousness, failing to recognize that identification of a previously unseen problem and providing a solution to that problem is not obvious and inventive. By assigning no value to the inventor's discovery of the problem and mechanically concluding that since some elements of the solution were in various prior art documents, the claims must be obvious, the board committed legal error. Donnie He, the inventor, recognized and solved a problem no one else saw while the LTE standard was being developed. And this was the problem. Under the draft security standard reflected in a document called TR-33821, when a user device moved between networks, the first network sent the device's security capabilities to the second network. But Mr. He realized that would cause problems when a device moved in idle mode from a non-LTE network to an LTE network. So he proposed a solution. Have the device itself, not the first network, send its security capabilities to the second LTE network. And that solution is captured in the 848 patent. The record here, though, is clear. Skilled artisans did not see that problem even when considering the specific prior art at issue. And they did not see the solution in that prior art either. In fact, when Mr. He proposed to modify TR itself, the key prior art reference here, to create the claimed invention, the engineers reacted with skepticism. They asked him for further explanations. They could not understand why the change he proposed was needed, even after his second submission. Counsel, this is Judge Lurie. You're approaching this as if you were starting from scratch. But we have a decision here. And the standard is substantial evidence concerning what these two close references disclose and whether there was a motivation to combine them. So we're not starting from scratch. We have a decision to which we have to give deference. Correct, Your Honor, although there's several issues here, some of which are legal issues concerning the obviousness analysis that the board performed. And the board here, first of all, there's a lack of any identified motivation to combine the specific elements of TR to create the claimed invention. To be sure, there are additional errors the board made, which are issues of substantial evidence. But a number of those issues, specifically the nexus error that the board committed, are ones that the director really offers no defense of on appeal. So while I absolutely agree for certain elements of this, the review is deferential, where the board made an error and the director is not defending it. Substantial evidence review is certainly not toothless. And those errors absolutely merit, at a minimum, a remand. And specifically to address the lack of motivation here, what TR describes, TR describes multiple two-network scenarios, which includes LTE to LTE idle mode mobility and active mode handover between LTE and non-LTE networks. Those are two-network scenarios, and in all of them, the old network node sends the device's security capabilities to the new network node. The setting of the patent is another two-network problem, and one of skill looking at TR would look to the two-network solutions. There's no evidence that anyone other than Mr. Hook, the inventor, recognized that those solutions may not work. The one-network... Mr. Love? Yes. Excuse me, this is Judge Shaw here. You said earlier that the problem, and correct me if I'm wrong, please, that the problem had never been recognized. But really, if you look at the two references here, TR33.821, and I guess it's... Is it TR or TS? TS. TS23.401. When you look at those together, doesn't the possibility of the problem really emerge from when you see what was already on the table? You could imagine that the possibility of the problem might emerge, Your Honor, but there isn't any specific identification of the problem until Mr. Ho's first submission to the engineers of 3GPP in October of 2007. He identified the specific problem and proposed a solution to address it, and they did not understand his identification of the problem. They asked for a further explanation. When he gave that further explanation, they then questioned whether his solution, having the device and the capabilities, was really needed at all, and they continued to cling to the idea that it should be done the same way all the other two network scenarios in TR were done, which was the old... Excuse me. Didn't the group, as I read the record, and please correct me if I have it wrong, but didn't the group come back and on several occasions ask him for more information or more explanation? I didn't see it as a sort of, oh, this isn't something we need or anything like that. They seemed to be saying, give us a little more information so we can understand it better. So, Your Honor, there are two key responses from the engineers. The first one, which came from the October 2007 meeting, was articulated as a request for more rationale. Now, his first submission, which is in the record at Appendix 2923, there's a section on that page where he discusses the rationale for it and really lays it out quite clearly to them. So it's not as if his first explanation, his first proposal offered no explanation at all. It did, yet they didn't understand it. Now, the real key here in terms of skepticism is the response to his second submission, and that's found in the record at Appendix 3008. 3008, did you say? Yes, Your Honor, 3008. And it's in the middle of the page there, and you'll see it's a reference to proposals that end in 039 and also 040. And you'll see Donnie has his name there. Now, the discussion here is about modifying an editor's note, but the key language here is this sentence, modify the note to clarify that if security capabilities are needed in Step 3, then possibly they are not needed in Step 1. And it's very helpful to look at what they're talking about, because if you look at his proposal, which was before them, the Step 3 and Step 1, we can see those steps on Appendix 3140. That's where he lays out the procedure, which corresponds to the invention of the 848 patent. Step 1 is his proposed solution that the device send the capabilities. Step 3 is a step where there's a message from the old network node to the new network node. So when we read their comment here on Appendix 3008, their position is, well, if the security capabilities are needed in Step 3, that's the old way of doing it, then possibly they are not needed in Step 1. So what this comment says to Mr. He is, in view of your proposal, it could be done the old way. We don't think your new way is needed. So he had proposed the solution. Possibly they are not needed. I mean, I understand what you're saying, Mr. Lubbitt. It didn't seem, it doesn't, these remarks, at least when I read them, don't seem to have quite the negative force that you attribute to them. That's just my initial reaction. Well, certainly, I don't think they're overwhelmingly negative. But what's clear is he has presented to the engineers the exact obviousness combination that the petition offers. The key prior art reference here is this TR reference. Mr. He has proposed essentially what Samsung's petition proposed. Here's a solution to solve this problem. And instead of adopting it, well, of course, that's the obvious way of doing it, they resisted that. They asked for explanation. And even here, I understand they're not outright rejecting it, but they're questioning why it's needed. And he responded to that further in the final submission, which was accepted. And you can see that in Appendix 2861. He specifically addresses this issue with why this editor's note is wrong, and why, in bold language on Appendix 2861, he says the security capabilities should be carried in Step 1. And he explains yet again the old way of doing it, the Step 3 method, where the old network note sends it, is not the way to go. And they finally accepted it on the third try. So, certainly, this is not some sort of violent rejection, but this is the kind of evidence that is – the purpose of this evidence is to prevent hindsight in concluding, well, this must have just been obvious. We know it wasn't obvious, because this exact obviousness combination was put before these engineers, and they did not perceive it as an obvious solution. If there are no more questions, I'll reserve the remainder of my time. Okay. Any more questions, Mr. Lowe, at the moment? No. Okay. I'm fine. Thank you. Thank you. All right. Then we'll hear from the director, Ms. Kager. Thank you, Your Honor. Your Honor, and may it please the Court, substantial evidence supports the Board's finding that the claims would have been obvious over this combination of these two technical references, the 23401 reference and the 33821 reference. As the Board found, it would have been obvious to have the phone send its security capabilities during the idle mode movement between the 3G and the LT network that is disclosed in 23401. Really, having the phone send was just one of two options that was disclosed in the other reference, the 33821, for transmitting security capabilities. So you either have the phone send or the older network send. And modifying 23401's process to choose one of these two options, both known... Doesn't this sound like a good case of judicial hindsight? You picked something that turned out to have special benefits? And, of course... Your Honor, I would disagree because I believe the Board followed the exact obviousness rationale that's dictated by the references. So if you start with... And it's important, as the Board repeatedly said, you start with 23401. And that is a reference that teaches the exact transition that the claims teach. They teach the idle mode mobility between an older network and a new network, so 3G to LT network. So you're already starting with knowing this transition. And the 23401 reference says, look, when you're connecting to this new network, you need to establish security. But 23401 is a technical document about network architecture, so it doesn't go further into how do you do the security negotiation. And so, as the Board found, that's why you look to 33821, which is specifically about establishing security with LTE networks. And, in fact, it parrots what the 23401 reference says. It says, when connecting to LTE, you need to establish security. And then it goes on and details all the security algorithms, selection, and key variation determinations, as the claims say. So they're not disputing any of the parts of the claim about how you establish security. All they're disputing is who would send these security capabilities. And 23821 only gives two options. You either have the phone send or you have the old network send. Both of those are disclosed in 33821. Both of them are known. They're viable. There's no argument of lack of predictability. And so, as the Board looked into in detail, the fundamental dispute is over who sends the security capabilities. And just choosing one out of only two finite number of options is just a simple substitution of one known element for another. So that alone gives you substantial evidence support for the obvious misdetermination here. But how about the position that, having chosen this option, it turns out to have particular benefits and advantages, which were not foreseen or announced or predicted as between just some routine, okay, let's improve security? Well, Your Honor, I would disagree that there was any surprising or unknown advantages. And, in fact, the Board found a lack of a showing of unexpected results. Well, we don't know. If it's not in the references, how do we know whether it's surprising or unknown? You're requiring them to take their invention and disprove it. Well, I would respectfully disagree, Your Honor. So Huawei did, in the trial proceedings, assert unexpected results. And the Board analyzed that, and you can look at that at page appendix 66. And, notably, Huawei is not disputing that on appeal. So they're not continuing to assert that the Board's findings with respect to unexpected results was incorrect. And with respect to the analysis of the skepticism… Are you sure about that? They certainly raised a lot of concern about the attention that was given to the secondary considerations in the final decision. Your Honor, they do focus very extensively on the skepticism evidence. But there's no argument with respect to unexpected results in their appeal briefs. And with respect to the skepticism evidence, as the Board found… And, again, I think it's important to note that the Board did not find no evidence of skepticism. What they found was, what Huawei had presented was, at best, weak evidence of skepticism. Putting the issue of nexus aside, which, I'd just say briefly, the Director was not conceding a lack of nexus. And we have defended it. And we do believe the Board's decision, based on the documents themselves, without any declaration testimony, that nexus decision is fully defendable and supported by substantial evidence. But the Board went further at appendix 64 and said, even if you presume nexus, all there is is weak evidence of skepticism. Because all there was was a request for more information. And it's not a request for information because we don't understand it or because we don't need it. That because is completely absent from the documents and filled in only respectfully by attorney argument here. Because, again, there is no declaration testimony about why it was rejected. Nothing from any members of the working group. Nothing from Mr. Hay himself. So all you have is this request for more information. And there's many reasons that you could request for more information. In fact, because they're developing a proposal, it could be we just want you to document the rationale for this so we have it in our records. It doesn't mean that we were rejecting your proposal. And so with respect to that first, the comment about more rationale is needed, the Board's decision with respect to that statement, that it's only weak evidence at best, is supported by substantial evidence. With respect to the December 2007 statement about the editor's note, I think it's important to note and look at the documents preceding that. So, for example, if you look at Appendix 3140, that is Mr. Hay's revised December 2007 proposal. And you can see on that page, the editor's note is put in by himself. It says, under Step 3, it is for further study whether the security capabilities should be carried in Step 3. So really, this document, Step 1 is having the phone send it. Step 3 is questioning whether or not you should have it in that step, which would be referring to the old network sending it. Mr. Hay's own proposal reflects what one of ordinary skill in the art would have seen from these documents, that there's just two options. And all we're doing is debating which one of these two known, viable, predictable options we should choose. The fact that one may have been better, as Huawei asserts, does not mean that the other one would not have been obvious. So choosing the phone does not need to be more relevant or more analogous. That's a language that Huawei uses in its reply brief, that having the old network send would have been the best fit. The prior art does not option chosen as obvious, does not need to be more relevant. And you also don't need to show that it would have been selected over other treatments. So really, at bottom, you have two references, both with disclosed, just two options. And all the board did was find that it was obvious to choose one. But getting back to the December 2007 skepticism that they've pointed to, so you have Mr. Hay himself putting in this editor's note about whether the security capabilities should be in Step 3. And so then it's not really surprising when you look at Appendix 3008, which is what counsel pointed to, that they're modifying this editor's note just to reflect these two options that Mr. Hay put in there. They didn't edit the actual proposal. They didn't cross off Step 1, having the phone send it. And so really, when you have two viable options, a debate about which one to use, as the board found, is really not skepticism. In fact, it really just shows how obvious these two were. And again, I'd say that it's important to remember that the board did not say no evidence of skepticism. They said, at best, it's weak evidence. And that they went on, on Appendix 67 and 68, looking at the totality of evidence, and seeing how strong the obviousness case was from these two technical references and the combination of them, and considering the weak evidence of skepticism and finding, as a whole, that the invention would have been obvious. Very briefly, I'd just like to address the emphasis counsel has placed on the board's hindsight analysis. Again, as I step through, the board did not rely on the inventor's conclusion. Instead, they stepped through the references, relying on the disclosure of the references themselves, to find a motivation to proceed with the phone sending the security capabilities. But where is that motivation in the references? Isn't that motivation purely the imposition of hindsight knowledge that one is indeed preferable? Well, again, I would disagree that one has to be preferable over the other. But you need a motivation. What do you say is the motivation to go in this direction? So the board has three reasons for motivation. First, the general motivation of that is just one of two options disclosed. Where is that motivation? How do you find the motivation in listing alternatives? So at Appendix 35, they say that it was a simple substitution of one for another. And under this court's precedent, under recently the Uber v. X1 decision, another decision in ACCO Brands v. Fellows, when an ordinary artisan is left with just two choices, each one of those two design choices is an obvious combination. And that's consistent with KSR, with the finite number of identified and predictable solutions. One of ordinary skilled in the art has good reason to pursue both of those. But the board also went on, and I'll point you to Appendix 41 to 42, where they talk about the fact that when you look at 2341, that is already sending its network capabilities. So you start with 2341, you have this claim transition from 3G to LTE, and the phone is already sending its network capabilities. And so when you know that you need security because the reference tells you to do that, you know that you need the security capabilities to establish that security because, again, the reference tells you that, then it would have been obvious if the phone is already sending its network capabilities to also send its security capabilities. But then the board went further, and they said that this makes sense to follow the phone and to follow the initial attachment process in 33821, which is the part where the phone sends it, because there was a symmetry already established in 23401. In 23401, in both initial attachment and the idle mode between these two different networks, the phone sent its security capabilities. In contrast, in 23401, when you had an LTE to LTE transition, so you're within the same network, the phone did not send. So the board found it made sense when you were looking outside 23401 that 23401 would also follow initial attachment process because it already did that within its own reference. And then when you look at 33821, it says, it seems most natural to assume the phone would send its security capabilities. So that really statement alone, if you're one of ordinary skill in the art, you're trying to figure out who is going to send these security capabilities, and you look at a reference and it says, it seems most natural to assume that the phone sends it, and I already have a symmetry established with initial attachment and idle mode in the reference that I'm starting with. That together is, we would say, substantial evidence supporting the motivation to combine in this reference. I don't believe I have much time left, but I'm happy to address any further questions. Otherwise, we just request that the court affirm the board's decision. Okay. Any more questions for Ms. Kuehler? No. No, I'm fine. Okay. Thank you. Mr. Lowe, you have your rebuttal time. Thank you, Your Honor. I'd like to start with the suggestion that this is just one of two options. That is a framing of this problem that is absolutely infected with hindsight. It is not correct to frame this as a simple choice between one of two options. The TR reference has a uniform solution for two network scenarios. The old network always sends the security capabilities to the new network. There was no recognition anywhere that in two network scenarios, having the device send security capabilities was an option. Recognizing that that was a possibility was the first step in Mr. Hayes' contribution. So once you simply decide that there are two options, you can frame it that way, but that is not how those of skill saw it, and that is not how the prior art suggests it. There's also a continuum of possibilities. It's not simply two options. The old network node could provide some security capabilities. The old network node could query the device and acquire more information and then send that on. The suggestion that this is a one-of-two-options scenario is simply wrong and not supported by the record. Second, I want to address the question about whether there's a nexus error. There is no factual dispute about the content of Mr. Hayes' proposals. He made submissions in parallel that modified two different procedures, LTE to LTE idle mode and non-LTE to LTE idle mode. That second contribution, it is the claimed invention. He proposed in both of those methods that the device would send its security capabilities. What the board did, they ignored that he had proposed the invention. They focused only on the LTE to LTE submission and the rest of it. They erroneously found that what he had proposed, which was the invention, was simply a description of an existing procedure that's found somewhere else. This is in appendix 59 to 61. They repeatedly say all he had proposed was an existing procedure that's found somewhere else. That is absolutely wrong, and if you look at the director's brief at pages 34 to 35, the director acknowledges that the board made that finding but makes no effort to defend it. Perhaps they don't come out and concede that there's a nexus error, but they haven't defended this. If you look at the steps of Mr. Hayes' submission and compare it to claim nine of the patent, we can see the elements of the invention are all there. Further, if it were true that as the board found this was simply a description of an existing procedure, that document, whatever it is, would have been the subject of Samsung's petition, but it was not because there is no such document. Mr. Ho's submission was new. That nexus error, at a minimum, requires a remand because the rest of the analysis of the secondary considerations, whether you view this as strong evidence of skepticism or perhaps less strong, all of the board's analysis was infected by this problem that they failed to see that he had proposed the invention itself. I'd also like to address the question about unexpected results. Mr. Ho explained the rationale for his invention, which describes the benefits that you obtain from using his approach. Avoiding unnecessary round trips back and forth is how it's described. That was not appreciated by the three GPP engineers. He was the only one who saw the need for the solution and the fact that it would provide a benefit, so we haven't articulated in our brief as an issue of unexpected results, but that's clearly the issue. He laid this before them, and they failed to recognize it until his third submission when they finally accepted it. I'd also like to briefly touch on the suggestion that the TS itself somehow motivates selection of initial attachment. These attempted analogies between initial attachment and idle mode mobility are simply not found in these references, that language that counsel referenced, the language that it seems most natural that the UE sends its capabilities to an MME. That is a statement in TR at Appendix 1788 that is about initial attachment. It has nothing to do with two network transitions. In initial attachment, the context of the statement, only the device could communicate with the network node because there is no old network node to obtain security capabilities from. That citation simply does not provide the motivation to combine. There is not any identified motivation to combine a specific one network solution to solve a two network problem. The objective evidence of skepticism here should have prevented that hindsight-based conclusion, but the board improperly dismissed that evidence through multiple legal errors, including what is effectively a conceded error in finding no nexus to the claims. For those reasons, we'd ask that the decision be reversed. Any questions for Mr. Love? No. No. Okay. Thank you all. Thanks to counsel. The case is submitted.